UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **BEATRICE N. DELAPHOUS** | **CIV. ACTION NO. 3:22-06248** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **TONYA BULLOCK, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a nondescript Rule 12(b) motion to dismiss, or alternatively, for more definite statement [doc. # 11] filed by Defendants, Tonya Bullock, Kelly Cook, and Renita Smith. The motion is opposed. For reasons detailed below, it is recommended that the motion to dismiss be GRANTED, and the alternative motion for more definite statement is DENIED, as moot.

## Background

On December 28, 2022, Plaintiff Beatrice Delaphous ("Delaphous"), who is representing herself in this matter, filed the instant complaint under Title VII of the Civil Rights Act of 1964 against Defendant Tonya Bullock ("Bullock") for racial discrimination, bullying, and intimidation, which apparently culminated with the thwarting of Delaphous's ambition to obtain a permanent position with her undisclosed employer. (Compl. [doc. # 1]). Delaphous also attached a Determination and Notice of Rights letter ("Right to Sue letter") that she received from the Equal Employment Opportunity Commission ("EEOC"), which was sent to Delaphous plus various individuals at "DCFS," to an address used by the Louisiana Department of Children and Family Services (hereinafter, "DCFS"). (Right to Sue letter [doc. # 1-2]).

Delaphous's original complaint was four sentences long and sparse on details.

Accordingly, on February 6, 2023, Delaphous filed an Amending and Supplemental Complaint ("ASC") against Bullock, plus two new Defendants, Kelly Cook ("Cook") and Renita Smith ("Smith"). (ASC [doc. # 3]). In her ASC, Delaphous listed claims for relief under Title VII, 42 U.S.C. §§ 2000e, *et seq*.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*.; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611, *et seq*.; 42 U.S.C. § 1983; and the age and disability provisions of the Louisiana Employment Discrimination Law ("LEDL"), Louisiana Revised Statute §§ 23:301, *et seq*. *Id*. Delaphous stated in conclusory terms that she had been discriminated against on the basis of disability and had suffered a retaliatory discharge. *Id*. She complained that her permanent position was withheld because of her race when she was informed that she was not known as well personally as other office workers. *Id*. Delaphous alleged that she was bullied, intimidated, isolated, and, ultimately, replaced by a white person. *Id*. She seeks $500,000 in compensatory damages, plus punitive and exemplary damages, as well as reasonable attorney's fees, and costs. *Id*., Prayer.

On March 10, 2023, Bullock, Cook, and Smith (collectively, "Defendants") filed the instant Rule 12(b) motion to dismiss Delaphous's complaint, as amended, for failure to state a claim upon which relief may be granted and for lack of subject matter jurisdiction. Alternatively, Defendants petitioned the court to require Delaphous to file a more definite statement.

On March 31, 2023, Delaphous filed a memorandum in opposition to the motion to dismiss wherein she conceded that she did not assert any claims under the ADA, the ADEA, or the FMLA. (Pl. Opp. Memo. [doc. # 13]). However, she urged the court to deny the motion as to her claims under Title VII and 42 U.S.C. § 1983, for which she supplied additional, supporting

2

facts. *Id*. For instance, Delaphous alleged that Bullock became enraged with her when Delaphous asked Bullock's sister to mask up (because of Covid-19 concerns) when she entered Delaphous's office. *Id*. After that incident, Bullock instructed everyone to leave their office doors open, a policy change that everyone blamed on Delaphous. *Id*.

Furthermore, Cook, "Delaphous's immediate white supervisor," told Delaphous that she should not be retained in a permanent position because Delaphous had questioned why she was being treated differently. *Id*. Cook forwarded Delaphous's inquiry to Bullock, who replied that Delaphous would not be placed in a permanent position because she asked too many questions. *Id*. According to Delaphous, no one else, especially white employees, had been punished for expressing an opinion or asking questions. *Id*. Cook later told Delaphous that Bullock wanted Cook to pressure Delaphous, possibly in an attempt to force her resignation. *Id*.

Delaphous eventually confronted Bullock, who explained that she "d[id] not know [her] like the others," which Delaphous interpreted to mean that she was not as familiar with Delaphous as she was with other black workers in the office. *Id*. Bullock then stated that she would not approve Delaphous becoming permanent because she did not feel comfortable with her. *Id*. Bullock subsequently had Cook and other staff members retrain Delaphous on tasks that she already had completed in an attempt to make her feel incompetent and unskilled. *Id*. Delaphous received a failing score on the tasks. *Id*.

Delaphous also heard Bullock make comments about her age. *Id*. Specifically, Bullock stated that if it were up to her, she would hire only women over 40 because people Delaphous's age were lazy and did not want to work. *Id*. As a result, Delaphous felt that Bullock believed that a black woman in her early 40s, or younger, was not qualified. *Id*. Bullock later hired an

older white female from another department because she was not going to hire anyone else who was black or young. *Id*.

In addition, Bullock became angry with Delaphous and singled her out for in-office work, despite having advising her and everyone else that they were going to work remotely because of Covid-19 restrictions. *Id*. Bullock continued to foster this hostile work environment by using bullying tactics and unfair treatment. *Id*. Delaphous attempted to transfer to a different department, but her request was denied. *Id*. Ultimately, Delaphous felt compelled to resign. *Id*.

On April 6, 2023, Defendants filed a reply brief wherein they re-urged their motion and emphasized that Delaphous had not included any facts in her complaint, as amended, to support claims under 42 U.S.C. § 1983. (Defs.' Reply Memo. [doc. # 14]). Alternatively, Defendants stated that Delaphous should amend her complaint to specify the allegations and actions pertaining to each individual defendant. The matter is ripe.

## **Analysis**

Defendants seek dismissal of Delaphous's claims under Title VII, the ADEA, the ADA, the LEDL, the FMLA, and 42 U.S.C. § 1983. With the exception of Defendants' sovereign immunity argument(s), which is analyzed as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the remainder of Defendants' arguments are asserted under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The court will consider the Rule 12(b)(6) arguments first.

I.  **Rule 12(b)(6)**

    a)    <u>Standard of Review</u>

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid

5

legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

"[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a Rule 12(b)(6) motion. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 997 (2002); *see also Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). The Supreme Court explained that the *McDonnell Douglas* framework[1] "is an evidentiary standard, not a pleading requirement." *Id.* at 510, 122 S.Ct. 992, 997.[2] Accordingly, a plaintiff's

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

[2] Furthermore, *Twombly* did not overrule *Swierkiewicz*. *See Twombly*, 550 U.S. at 569-70, 127 S.Ct. 1955.

complaint need only comply with Rule 8, which requires no more than "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8; *Swierkiewicz*, 423 U.S. at 515, 122 S.Ct. 992.

      b)    <u>Unasserted Claims</u>

As noted above, Delaphous expressly stated in her memorandum that she did not assert any claims under the ADA, the ADEA, and the FMLA. (Pl. Opp. Memo., pgs. 4-5 [doc. # 13]). Accordingly, IT IS RECOMMENDED that the Court grant Defendants' motion to dismiss these claims.

      c)    <u>Title VII Claim</u>

Defendants seek dismissal of Delaphous's Title VII claims asserted against them because Defendants do not meet the definition of an "employer" under the statute.

Generally, only employers may be liable under Title VII. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (citations omitted). Stated differently, "title VII does not permit the imposition of liability upon individuals unless they meet title VII's definition of 'employer.'" *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994).

Determining whether a defendant is an "employer" under Title VII is a two-step process. *Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citation omitted). First, the court must determine whether the defendant falls within Title VII's statutory definition of an "employer," which is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees . . ., and any agent of such a person . . ." *Id*. (citing 42 U.S.C. § 2000e(b)). Second, if the defendant meets this definition, the court then must analyze whether an employment relationship exists between the plaintiff and the defendant. *Id*.

The "any agent" component of the statutory definition of "employer" is to be interpreted liberally,[3] but not literally; rather, the phrase conveys Congress's intent to "import *respondeat superior* liability into Title VII." *Smith v. Amedisys, Inc.*, 298 F.3d 434, 449 (5th Cir. 2002) (citations omitted). Although, under certain circumstances, an immediate supervisor may be considered an "agent" and therefore an "employer" under Title VII, the supervisor faces liability solely in her official, not individual, capacity. *Harvey, supra; Grant v. Lone Star Co.*, 21 F.3d 649, 652-53 (5th Cir. 1994). Thus, a Title VII suit against a supervisor, who is not an "employer" in her own right – is actually a suit against the employing entity. *Indest v. Freeman Decorating, Inc.*, 164, F.3d 258, 262 (5th Cir. 1999).

Further, to determine whether an employment relationship exists under Title VII, the courts apply a "hybrid economic realities/common law control test." *Muhammad*, 479 F.3d at 380 (citation omitted). When examining the control component, courts focus on whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the employee. *Id*. The economic realities aspect of the test centers upon "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id*.

Here, Delaphous stated in her opposition brief that, although she might not have alleged that Defendants were her employers, this missing allegation may be inferred from her complaint. (Pl. Opp. Memo., pg. 4). Delaphous explained that she worked under Defendants' direction, they controlled her work, and they had the authority to hire and fire within the department. *Id*. She added that Defendants were "pseudo-employers," acting in their official capacity as

---

[3] *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990) (citations omitted)

8

employees of the DCFS. *Id*. She concluded by stating that the DCFS is a state department that employs the requisite number of persons to qualify as an employer under the statute. *Id*.

Upon consideration of the parties' positions, it is manifest that Delaphous did not allege in her complaint, as amended, that any current Defendant was her employer or that any current Defendant satisfied Title VII's statutory definition of "employer." 42 U.S.C. § 2000e(b). For instance, there is no allegation that any Defendant employed 15 or more employees. *See Mejia v. Ayala*, Civ. Action No. 21-0587, 2021 WL 3930090, at *3 (N.D. Tex. Sept. 2, 2021) (collecting cases where courts dismissed claims or parties for failure to allege that the defendant employed the requisite number of employees). Instead, Delaphous alleged that the *DCFS* employed the requisite number of employees, which is consistent with her representation that she is suing Defendants in their official capacity.

In addition, while Delaphous endeavored to set forth some of the considerations for an employment relationship in her brief, there were no facts alleged to suggest that any Defendant met the economic realities component of the hybrid test.

Accordingly, the court finds that Delaphous does not state a claim for relief under Title VII against Defendants, in their individual capacity. *See Wilson v. New Wendys, Inc.*, Civ. Action No. 18-1049, 2019 WL 6247823, at *3 (W.D. La. Nov. 20, 2019) (Doughty, J.) (citations omitted) ("Fifth Circuit precedent is clear that individual employees are not subject to personal liability under Title VII.").

Further, while Delaphous ostensibly could have sued Defendants, in their *official* capacity, in an attempt to reach her actual employer(apparently, the DCFS), she did not allege facts to that effect in her pleading(s). Moreover, given that Delaphous will have an opportunity to amend her complaint again, *see* discussion, *infra*, there is no apparent reason why she could

9

not assert a claim against DCFS directly.[4] In the interim, the undersigned will recommend that, insofar as Delaphous intended to assert Title VII official capacity claims against Defendants, said claims should be dismissed, subject to her opportunity to assert a Title VII claim directly against her presumed employer, the DCFS.

      d)      <u>LEDL Claim</u>

Delaphous's claims against Defendants under the LEDL face the same obstacle as her Title VII claim: "Louisiana courts have consistently held that neither co-employees nor supervisors are subject to individual liability under the LEDL." *Hilliard v. Par.*, 991 F. Supp.2d 769, 777–78 (E.D. La. 2014) (citations omitted); *Jaurdon-Simmons v. Tramontin*, Civ. Action No. 20-435, 2020 WL 8085100, at *3 (M.D. La. Dec. 9, 2020), *R&R adopted*, 2021 WL 76962 (M.D. La. Jan. 8, 2021) (there is no individual liability under the LEDL).

Unlike her Title VII claim, however, Delaphous may not amend to assert an LEDL claim against Defendants, in their official capacity, or the DCFS directly, because the DCFS is a state agency that has not consented to be sued in federal court. *See McLin v. Twenty-First Judicial Dist.*, 22-30490, 2023 WL 5274403, at *3 n.23 (5th Cir. Aug. 16, 2023) (citation omitted) (LEDL discrimination claim is barred by Eleventh Amendment); and discussion, *infra*.

      e)      <u>§ 1983 Individual Capacity Claims</u>

In her ASC, Delaphous makes a bare reference to 42 U.S.C. § 1983. A § 1983 suit may be brought against a party in that party's official or individual/personal capacity, as well as against a government entity. *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009).

---

[4] "Title VII clearly abrogated the States' Eleventh Amendment immunity." *Ussery v. State of La. on Behalf of Louisiana Dep't of Health & Hosps.*, 150 F.3d 431, 434 (5th Cir. 1998).

Further, unlike Title VII, § 1983 applies to individuals." *Jones v. Hosemann*, 812 Fed. App'x. 235, 238 (5th Cir. 2020) (citing *Sims v. City of Madisonville*, 894 F.3d 632, 640–41 (5th Cir. 2018)).  A § 1983 *personal-capacity* suit seeks to impose liability on a "government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358 (1991) (emphasis added).  On the other hand, a suit against a party in that party's *official-capacity* is generally "another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris Cty.,* 571 F.3d at 395 (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, n.55 (1978).

Delaphous does not specify in her complaint, as amended, whether she is suing Defendants in their individual or official capacities.  In her brief, however, she suggests that she is suing them in both capacities.  Accordingly, the court will address both types of claims, beginning with the individual capacity claim.

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).  Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein.  *Id*.  "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id*.  (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, a plaintiff must plead that some person has deprived her of a federal right, and that the same person acted under color of state or territorial law. *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citation omitted).  In addition, when, as it appears here, a plaintiff seeks money damages from

11

government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)).

Qualified immunity is nominally characterized as an affirmative defense. However, once raised by defendants, it devolves upon the plaintiff to negate the defense by showing that the officials' conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) (citation omitted). Plaintiff's burden is two-pronged. *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted). First, a plaintiff must demonstrate that defendant(s) violated a constitutional right under current law. *Id*. "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id*. (quoted source and internal quotation marks omitted). The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

Here, Defendants raised qualified immunity in their motion to dismiss. In response, however, Delaphous made no effort to show how each Defendant violated any particular constitutional right under then-clearly established law. While Delaphous endeavored to set forth actionable conduct in her brief, the allegations remain tenuous to non-existent. For instance, she included no facts against Smith. Moreover, the minimal facts she asserted against Cook suggest

12

that Cook reluctantly was following directions that she had received from Bullock. Although Bullock purportedly played a more central role in Delaphous's apparently short-lived tenure at the DCFS, no such facts appear in her complaint, as amended. In fact, as noted by Defendants, Delaphous did not even identify her racial classification.

Ultimately, "a plaintiff must plead that each Government-official defendant, through *the official's own individual actions*, has violated the Constitution." *Jones,* 812 Fed. App'x. at 238 (quoting *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937). In other words, "[i]t is not enough for a plaintiff to simply allege that something unconstitutional happened to h[er]. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm." *Id*.

Ultimately, Delaphous's complaint, as amended, does not allege facts to support a § 1983 claim against Defendants, in their individual capacity. She will have the opportunity to cure that pleading deficiency, as detailed below.

## II. Rule 12(b)(1)

### a) Standard of Review

A party's invocation of sovereign immunity under the Eleventh Amendment is properly analyzed as a challenge to the federal court's exercise of federal subject matter jurisdiction. *Mahogany v. Louisiana State Supreme Court*, 262 Fed. App'x. 636 (5th Cir. 2008) (citations omitted); *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) ("Sovereign immunity is indeed a jurisdictional bar."). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v.*

*Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

b) <u>Eleventh Amendment Sovereign Immunity</u>

As stated previously, official capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citation omitted). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. Consequently, the Eleventh Amendment bars suit against state officials and employees of state entities, acting in their official capacities. *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citations omitted); *Green v. State Bar of Texas*, 27 F.3d 1083, 1087-88 (5th Cir. 1994) (plaintiff cannot evade Eleventh Amendment by suing state employees in their official capacity); *Brown v. McLane*, 807 Fed. App'x. 410, 411 (5th Cir. 2020) (Eleventh Amendment bars federal constitutional claims for damages *and* state-law claims, regardless of the form of relief sought against state agency head, in her official capacity) (citation omitted).

Here, Delaphous stated in her brief that Defendants were acting in their official capacity as employees of the Louisiana DCFS. (Pl. Opp. Memo., pg. 4). Courts have recognized that the Louisiana DCFS is an arm of the state, and thereby entitled to sovereign immunity under the Eleventh Amendment. *Richard v. La Dept Children & Family Servs.*, Civ. Action No. 18-1257, 2022 WL 3328978, at *2 (W.D. La. Aug. 11, 2022); *El Bey v. Caddo Par. Juvenile Court*, Civ. Action No. 21-4245, 2023 WL 1421955, at *2 (W.D. La. Jan. 30, 2023); *Head v. Gardner*, Civ.

Action No. 21-1891, 2022 WL 570463, at *3 (W.D. La. Feb. 9, 2022), *R&R adopted,* 2022 WL 567840 (W.D. La. Feb. 24, 2022).

The Eleventh Amendment bars suits for both monetary damages and injunctive relief against a state entity. *Darlak v. Bobear*, 814 F.2d 1055, 1060 (5th Cir. 1987). It also precludes federal courts from hearing state law claims brought in federal court against state entities. *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984)); *Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997). While a federal statute can override the Eleventh Amendment bar with clear congressional intent, it is manifest that § 1983 does not abrogate a state's sovereign immunity. *Hanna v. LeBlanc*, 716 Fed. App'x 265, 268 (5th Cir. 2017); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). (citation omitted). Furthermore, while this immunity may be waived, Louisiana has refused to do so. *See* LA. R.S. § 13:5106(A) ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."); *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991).

There is, of course, a caveat. The *Ex Parte Young* doctrine recognizes an exception to Eleventh Amendment immunity for claims of prospective injunctive or declaratory relief against a state official. *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908). Stated differently, "prospective injunctive or declaratory relief against a state [official] is permitted . . . but retrospective relief in the form of a money judgment in compensation for past wrongs . . . is barred." *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) (citation omitted).

In this case, however, Delaphous is not seeking prospective injunctive or declaratory relief from a state official. *See* ASC (seeking monetary damages). Furthermore, even if

15

Delaphous *had* intended to advance a claim for injunctive relief that potentially might have fallen within the *Ex Parte Young* exception, she still has not shown that any of the named Defendants has authority to grant injunctive or declaratory relief that she might have requested. *See, e.g.*, *Volk v. Gonzales*, 207 F.3d 657 (5th Cir. 2000) (holding that district court's grant of declaratory and injunctive relief was not proper where neither defendant had the power to effect the court's directives).

Accordingly, the court lacks jurisdiction to proceed with Delaphous's § 1983 claims asserted against Defendants, in their official capacities, and IT IS RECOMMENDED that said claims should be dismissed, without prejudice. *Carver, supra*; *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (citing FED. R. CIV. P. 12(b)(1)).

### III. More Definite Statement and/or Amendment

Having determined that Defendants' primary motion under Rule 12(b) should be granted, Defendants' alternative request for a more definite statement under Rule 12(e) is superfluous and moot.

Instead, to preserve her case, Delaphous must amend her complaint to state a claim for relief. The court is obliged to "freely" grant leave to amend "when justice so requires." FED.R.CIV.P. 15(a)(2). "It is well settled that before dismissing a complaint, a pro se plaintiff should be given an opportunity to amend h[er] complaint to remedy any deficiencies." *Hernandez v. W. Texas Treasures Estate Sales, L.L.C.*, No. 22-50048, ___ F.4th ___, 2023 WL 5284460, at *2 (5th Cir. Aug. 17, 2023) (citation omitted). Thus, "leave to amend should be liberally granted, when the plaintiff might be able to state a claim based on the underlying facts and circumstances." *Id*. (citation omitted).

16

Here, it is conceivable that Delaphous may cure one or more aspects of her deficient pleading via amendment. Accordingly, the instant recommendation of dismissal is subject to Delaphous's opportunity to seek leave of court to amend her complaint *with a proposed pleading that cures the deficient allegations* – **within the deadline to file objections to this report and recommendation**. *See* below.

## Conclusion

For the above assigned reasons, and in the absence of a curative amendment,

IT IS RECOMMENDED that the Rule 12(b) motion to dismiss [doc. # 11] filed by Defendants, Tonya Bullock, Kelly Cook, and Renita Smith be GRANTED, as follows:

(1) Plaintiff Beatrice Delaphous's claims under the ADA, the ADEA, the FMLA, and Title VII, plus her individual capacity claims under the LEDL and 42 U.S.C. § 1983 be DISMISSED, with prejudice, for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

(2) Plaintiff Beatrice Delaphous's official capacity claims under the LEDL, if any, and 42 U.S.C. § 1983 be DISMISSED, without prejudice, for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1).

IT IS ORDERED that Defendants' alternative motion for more definite statement [doc. # 11] is DENIED, as moot.[5]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party=s objections

---

[5] As this motion is not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1.

within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

      A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

      In Chambers, at Monroe, Louisiana, on this 24th day of August, 2023.

                                             KAYLA DYE MCCLUSKY
                                             UNITED STATES MAGISTRATE JUDGE